FREDERICK T. FLEITMANN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 28450. Promulgated April 20, 1931.

*Richard E. Dwight, Esq., F. S. Winston, Esq., W. N. Wood, Esq.,* and *Howe P. Cochran, Esq.,* for the petitioner.

*Bruce A. Low, Esq.,* and *L. H. Rushbrook, Esq.,* for the respondent.

OPINION.

ARUNDELL: Petitioner's return for 1918 was filed on March 13, 1919, and, unless the limitation period was waived, the time for assessment and collection expired five years later or on March 13, 1924. The assessment, a part of which the respondent is now attempting to collect, was timely, having been made on March 8, 1924. We have then, the precise question of whether collection is barred.

The waivers filed by petitioner are as follows:

| Kind | Date of waiver | Period of extension |
|---|---|---|
| Assessment and collection | Feb. 18, 1924 | To Feb. 18, 1925. |
| Assessment | Feb. 18, 1926 | To Dec. 31, 1926. |
| ___do___ | Nov. 18, 1926 | To Dec. 31, 1927. |
| Collection | Dec. 15, 1927 | To Dec. 31, 1928. |
| ___do___ | Oct. 17. 1928 | To Dec. 31, 1929. |
| ___do___ | Sept. 27, 1929 | To Dec. 31, 1930. |

Whether the first of these waivers was invalid by reason of the lack of respondent's signature need not be decided, because the second waiver, dated February 18, 1926, was executed before the enactment of the Revenue Act of 1926 and hence it operated to extend the time under section 278 (e) of that Act. Before the second waiver expired a third one, dated November 18, 1926, was executed which, if valid, extended the period beyond the date of the deficiency notice, March 14, 1927. Petitioner's argument that waivers of the period for assessment do not waive the period for collection has been disposed of by the decisions in *Stange* v. *United States*, 282 U. S. 270; and *Aiken* v. *Burnet*, 282 U. S. 277.

The remaining contentions of the parties go to the validity of the waivers in view of the fact that they were not personally signed by the Commissioner of Internal Revenue. It is established that the Commissioner need not personally sign waivers in order to render them valid. *Marshall Wells Co.* v. *Willcuts*, 41 Fed. (2d) 751; *Pantages Theatre Co.*, 17 B. T. A. 82; affd., 42 Fed. (2d) 810; *United Thacker Coal Co.* v. *Commissioner*, 43 Fed. (2d) 782; affirming on this point 15 B. T. A. 273. We do not understand that petitioner seriously questions this proposition. The evidence establishes that H. B. Robinson, head of the Audit Review Division of the Income Tax Unit, and Charles W. Anderson, Collector for the Third District of New York, were authorized by the Commissioner to sign waivers. These officials delegated to subordinates the mechanical act of signing the Commissioner's name and petitioner challenges the validity of waivers thus signed, arguing (1) that the signing of a waiver is not a ministerial act, and (2) that, if it is, it is not the kind of a ministerial act that can be delegated.

The evidence discloses that in each instance a waiver was requested by the respondent and it was pursuant to these requests that the waivers were signed and sent in by the petitioner. It has been pointed out in other cases that there is no requirement that a consent be evidenced by one piece of paper, and when the correspondence between the parties shows that they understood the statute to be extended there is a sufficient consent in writing. See *Sabin* v. *United*

*States* (Ct. Cls.), 44 Fed. (2d) 70; *Moses* v. *United States*, 43 Fed. (2d) 653. The *Sabin* decision holds that:

> The statute does not require that a consent, in order to be valid, must be in one instrument or that it shall be in any particular form. All that is required is that the consent be evidenced in writing. * * * The statute requires no more than that there shall be written evidence of the fact that both parties understand that the limitation period specified in the statute is not to govern the matter, and, therefore, that when a date to which the period has been extended is specified there shall be a complete understanding about it.

If this view be correct the consents in writing were complete when the petitioners signed and filed the waiver forms.

The nature of waivers has been discussed in several recent cases by the Supreme Court. In *Stange* v. *United States*, 282 U. S. 270, it is pointed out that " a waiver is not a contract " but that it is essentially " a voluntary unilateral waiver of a defence by the taxpayer." And in *Burnet* v. *Chicago Railway Equipment Co.*, 282 U. S. 295, it is said that " the Commissioner's signature was required for purely administrative purposes." See also *Florsheim Bros. Dry Goods Co.* v. *United States*, 280 U. S. 453, and *Aiken* v. *Burnet*, 282 U. S. 277. These decisions do not hold, nor does the law require, that the Commissioner must personally affix his signature to waivers. Neither does the law require specific delegation by the Commissioner of authority to sign his name in order to validate waivers. The revenue acts from the earliest time have imposed a multitude of duties on the Commissioner, yet it has never been supposed that the law required the incumbent of the office to personally perform them. On the contrary, it is common knowledge that a large number of employees are engaged in carrying out the duties imposed by law on the Commissioner. The statute does not provide for these employees by name of by official designation—except in a few cases such as deputy commissioners and the general counsel, nor does it describe their duties, but the need for them is recognized by Congress in making appropriations for their salaries. Cf. *Wells* v. *Nickles*, 104 U. S. 444, 447, holding that if any authority from Congress was necessary to enable the Secretary of the Interior to appoint certain agents, " it may fairly be inferred from appropriations made to pay for the services of these special timber agents." See also *United States* v. *MacDaniel*, 7 Pet. 1, 14, 15, holding that:

> To attempt to regulate, by law, the minute movements of every part of the complicated machinery of government, would evince a most unpardonable ignorance on the subject. Whilst the great outlines of its movements may be marked out, there are numberless things which must be done, that can neither be anticipated nor defined, and which are essential to the proper action of the government. Hence, of necessity, usages have been established in every

department of the government, which have become a kind of common law, and regulate the rights and duties of those who act within their respective limits.

The evidence in this case establishes that it was the practice in both Robinson's and Anderson's offices for waivers to be brought to the attention of Robinson and Anderson and when they determined that the waivers should be signed, the physical act of signing was delegated to employees. While of course it is fundamental in the law of agency that an agent can not delegate his powers, there is abundant authority to the effect that ministerial acts may be delegated and that the affixing of a signature may be such an act. The duties of Robinson and Anderson under their authorizations had a double aspect in that they were both discretionary and ministerial. They were discretionary to the extent that it was necessary to determine whether the waivers were acceptable. Division heads had been specifically directed in I. T. U. Order No. 83 that that was a part of their duties. That duty, involving as it did the exercise of discretion, perhaps could not be delegated without specific authorization from the Commissioner. The evidence is not only that there was no attempt to delegate that duty, but that it was personally performed by Robinson and Anderson by having the waivers presented to them for decision as to acceptability. The ministerial part of Robinson's and Anderson's duties was the physical signing of the waivers. This was the only part that they delegated, and in our opinion it was a valid delegation. See *Estill County* v. *Embry*, 144 Fed. 913; *Rohrbough* v. *United States Express Co.*, 50 W. Va. 148; 40 S. E. 398; *Groscup* v. *Downey*, 105 Md. 273; 65 Atl. 930; *Worsley* v. *Ayres*, 144 Iowa 676; 123 N. W. 353.

Accordingly, we hold valid the waivers executed by petitioner and to which the Commissioner's name was affixed by employees in his office and in the office of the collector under the circumstances disclosed by the evidence.

Reviewed by the Board.

> *The proceeding will be restored to the general calendar for hearing on the merits in due course.*

TRAMMELL, dissenting: I agree that it is not necessary that both the taxpayer and the Commissioner sign the same instrument expressing their consent to an extension of time for assessment or collection. The consent of the Commissioner, in my opinion, can

be given in a letter duly signed. However, there must be some written instrument signed by the Commissioner, or his duly ·authorized agent, accepting a waiver previously signed by the taxpayer. In the prevailing opinion no reliance is placed upon the first waiver, which was executed by the taxpayer, on February 18, 1924, but it is stated that, regardless of this waiver, the one executed by the taxpayer on February 18, 1926, and subsequent waivers, are sufficient. We must keep in mind that when facts have been disclosed which clearly show that the statute of limitations has run, the respondent has the burden of going forward to show that the period has been extended by proper waiver. In my opinion this is not done by a showing that a waiver was executed by the taxpayer on February 18, 1926. The evidence does not disclose that it was signed by any one authorized by the Commissioner to sign it prior to the passage of the 1926 Act, even conceding that the signature of the Commissioner placed thereon in the manner indicated was a proper signature. If it was not properly signed by the Commissioner or his representative prior to the passage of the 1926 Act, the assessment was clearly barred when the 1926 Act was passed, and under section 278 (e) of that act the tax liability could not be revived by subsequent waivers and the case comes squarely within our decision in *Corn Products Refining Co.*, 22 B. T. A. 605.

The burden of proof was upon the Commissioner to show that the waiver was executed by both parties prior to the passage of the 1926 Act in· order to sustain his position that the statute of limitations had not run. This he has failed to do.

In my opinion, the signatures placed on the waivers by the secretary to Mr. Robinson at his direction were unauthorized. It may well be that if the Commissioner's signature were placed on the waiver by Robinson's secretary *in his presence and at his direction*, it might be considered his own act. The evidence, however, does not disclose that this was the case.

I think it is clear that the statute contemplated that the Commissioner should sign waivers personally or that he should designate or authorize others to sign them for him, and that those so authorized by the Commissioner do not have authority to delegate that power to any one else. I think this is made clear from the language of the Supreme Court in the case of *Florsheim Bros. Dry Goods Co.* v. *United States*, 280 U. S. 453, where the Court, in referring to the necessity of the consent of the Commissioner in writing, said:

If a reason must be found, it exists in the general desirability of the requirement as an administrative matter. It serves to keep the Commissioner in closer touch with the matters he is charged to administer. It avoids claims

of improvident execution of waivers and unauthorized exactions by subordinates of the department * * * and it provides a formal procedure which is generally desirable * * *.

In the *Stange* and *Aiken* cases, recently decided by the Supreme Court, it relied upon and quoted from the *Florsheim* case as above as authority for statements made in those cases with respect to the *requirement* of the Commissioner's signature.

If subordinates in the Department, without authority from the Commissioner, approve waivers, the very purpose of the requirement of the statute would be overthrown. The Commissioner would not be kept in close touch with the matters he is charged to administer. Improvident execution of waivers by subordinates of the Department would not be obviated. I think, therefore, that the Commissioner's name placed on the waivers by Robinson's secretary was unauthorized and did not constitute the consent of the Commissioner in writing.

I agree that the Commissioner's signature, placed on a waiver in the absence of any evidence with respect to authority of the person who put it there, might be presumed to be his authorized signature, but the evidence in this case is sufficient to overcome that presumption.

I am inclined to think that the correspondence which appears to be relied upon to some extent to sustain the validity of the waivers and which passed prior to the execution of any waiver, is not shown to be sufficient in this case. The correspondence preceding the letters of December 16, 1927, November 5, 1928, and September 25, 1929, may, in so far as the record discloses, have been written by subordinates in the Department and the very purpose of the requirement of the consent in writing of the Commissioner and the taxpayer to the waiver is to avoid improvident execution of waivers and unauthorized exactions by subordinates and to keep the Commissioner in closer touch with matters he is charged to administer. The correspondence referred to does not disclose that the Commissioner, or any one duly authorized by him, would accept or approve the waivers when executed by the taxpayer. The respondent does not recognize the waivers received pursuant to the request for waivers as being complete when received, in view of subsequent action in having them executed by Robinson's secretary, a wholly unauthorized act.

For the foregoing reasons, I find myself unable to concur in the majority opinion in this case.