**BIANCHI v. DOMENECH, Treasurer of Puerto Rico.**

No. 3003.

Circuit Court of Appeals, First Circuit.

May 25, 1935.

A. P. Bersohn, of New York City (Frank Bianchi, of San Juan, P. R., and Phelan Beale and Bouvier & Beale, all of New York City, on the brief), for appellant.

William C. Rigby, of Washington, D. C. (Benjamin J. Horton, Atty. Gen., of Puerto Rico, and Nathan R. Margold, Sol. for Department of Interior, of Washington, D. C., on the brief), for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

BINGHAM, Circuit Judge.

This is an action at law brought by the plaintiff against the Treasurer of Puerto Rico to recover a deficiency tax assessed against him for the year 1917 of $4,067.22, plus interest and surcharges, in all amounting to $8,232.03, which the taxpayer paid under protest September 17, 1930. The District Court of Mayaguez, where the suit was brought, sustained the claim of the plaintiff. The Supreme Court of Puerto Rico on appeal reversed the judgment of the District Court and awarded judgment for the Treasurer, dismissing the complaint, and the taxpayer appealed.

It appears that the original return of the taxpayer for the year 1917 was filed May 30, 1918, and a tax was assessed upon it in the sum of $350.14, which was duly paid; that thereafter the Treasurer, through one of his inspectors, discovered that the original return was erroneous in that the plaintiff had failed to include in the original return the sum of $86,-795.88 received by him in 1917 as a member of the firm of Successors of Bianchi; that this discovery was made on or before May 5, 1920; that on May 5, 1920, a further return, signed by the plaintiff, was filed with the Treasurer which included this additional sum; that on June 10, 1922, the Treasurer of Puerto Rico, purporting to act under the Federal Revenue Act of September 8, 1916 (39 Stat. 756), as amended, assessed against the plaintiff, in accordance with this return, an income tax in the sum of $4,417.36, from which was deducted the amount paid under the original return ($350.14), leaving a balance of $4,067.22; that this sum with interest and surcharges represents the $8,232.03 paid by the plaintiff and here sought to be recovered; that the tax assessed at $4,067.22 was notified to the plaintiff on July 10, 1922; that as early as April 13, 1923, if not before, the collector had begun attachment or distraint proceedings against the property of the plaintiff to collect the tax; that the attachment or distraint proceedings were stayed from time to time at the request of the plaintiff or his attorney for one reason or another until September, 1930, when the taxpayer, on the 17th of that month, paid the tax under protest to avoid a sale of his property.

The plaintiff claims that the collection of the tax at the time it was paid, September 17, 1930, was barred under the provisions of section 250 (d) of the Federal Revenue Act of 1921 (42 Stat. 264), which provides that "no suit or proceeding for the collection of any such taxes due under this Act or under prior income, excess-profits, of war-profits tax Acts * * * shall be begun, after the expiration of five years after the date when such return was filed. * * *"

The difficulty with this contention of the plaintiff is that the Federal Revenue Act of 1921 is without application to this case. No federal income tax act is here involved except the Act of September 8, 1916 (39 Stat. 756), as amended in 1917 (40 Stat. 300), under which the taxes in question were imposed. Section 23 of the Revenue Act of 1916 (39 Stat. 776) extended the income provisions of that act to Puerto Rico and provided that the law should be administered and the collection of the taxes imposed be made by the appropriate internal revenue officers of the government of Puerto

Rico, and that the revenue collected should be for the benefit of the general government thereof. By section 5 of the Federal Act of October 3, 1917 (40 Stat. 300, 302), the Legislature of Puerto Rico was given power "to amend, alter, modify, or repeal the income tax laws in force in Porto Rico." This grant of power was repeated in the Act of February 24, 1919 (40 Stat. 1058, 1087, 1088, § 261), and the Act of November 23, 1921 (42 Stat. 227, 271, § 261). By sections 25, 37, and 57 of the Organic Act of Puerto Rico of March 2, 1917 (39 Stat. 958, 964, 968 (48 USCA §§ 735, 736, 774, 811, 821), the Puerto Rican Legislature was given general legislative power and by section 3 (48 USCA § 741) to levy "taxes and assessments on property, *internal revenue,* and license fees, and royalties for franchises, privileges, and concessions." See Domenech v. Havemeyer (C. C. A.) 49 F.(2d) 849, 850, 851.

Pursuant to this power the Legislature of Puerto Rico, by Act No. 80 of June 26, 1919 (Laws Puerto Rico, 1919, pp. 612–673), repealed, as applied to Puerto Rico, the Federal Income Tax Law of 1916 as amended in 1917, and enacted an income tax law of its own. In this Act of June 26, 1919, the Legislature not only pointed out the manner and time within which taxes levied under the local act of 1919 should be assessed and collected, but enacted a saving clause or clauses with reference to the assessment and collection of taxes imposed under the Federal Act of 1916 as amended, as follows:

"Section 77.—That pursuant to the provisions of Section 5 of the Federal Act of October 3, 1917, granting power to the Legislature of Porto Rico to amend, alter, modify or repeal the income-tax laws in force in Porto Rico, through proper legislation, there is hereby repealed in Porto Rico the Federal Act of September 8, 1916, as amended October 3, 1917, *except that the same shall continue in force with regard to the levying and collection of all taxes accrued thereunder* and for the levying and collection of all fines heretofore imposed or which it may be necessary to impose in connection with said taxes * * *." (Italics supplied.)

"Section 78.—That all laws or parts of laws in conflict herewith are hereby repealed; but the provisions thereof shall continue in force as regards the levy-ing and collection of all taxes accrued thereunder, and for the levying and collection of all fines imposed or that may be imposed in connection with said taxes; and any appropriation made for the purpose of carrying out the provisions of said laws shall also remain in force."

July 1, 1921, the Legislature of Puerto Rico enacted Income Tax Act No. 43 (Laws Puerto Rico, 1921, pp. 312–356) and likewise provided the manner and time for the assessment and collection of the taxes levied under that act and under prior laws. As to the prior laws it provided as follows:

"Section 63.—That all laws or parts of laws in conflict herewith are hereby repealed; but the provisions thereof shall continue in force as regards the levying and collection of all taxes accrued thereunder, and for the levying and collection of all fines imposed or that may be imposed in connection with said taxes."

See, also, Rev. St. and Codes of Puerto Rico 1913, § 3093; Domenech v. Havemeyer (C. C. A.) 49 F.(2d) 849, 850; Hertz v. Woodman, 218 U. S. 205, 216, 30 S. Ct. 621, 54 L. Ed. 1001; United States v. Ayer (C. C. A.) 12 F.(2d) 194, 197.

It is unnecessary to refer to the provisions of the Tax Act of Puerto Rico of 1924, approved August 6, 1925 (Laws Puerto Rico 1925, No. 74). It does not change the provisions with relation to the assessment and collection of taxes in Puerto Rico under the Federal Revenue Act of 1916 as amended in 1917. While the Federal Act of 1916, as amended, was repealed by the Puerto Rican Act of 1919, it was specifically continued in force by section 77 of the act of 1919 as to the assessment and collection of taxes that had accrued under the act of 1916; and section 77 of the act of 1919 was not repealed or altered by any of the subsequent tax acts of Puerto Rico.

The only limitation in regard to the assessment of a tax under the Federal Act of 1916 is found in section 9 (a), 39 Stat. 763, as follows:

"Sec. 9 (a) That all assessments shall be made by the Commissioner of Internal Revenue and all persons shall be notified of the amount for which they are respectively liable on or before the first day of June of each successive year, and said amounts shall be paid on or before

the fifteenth day of June, except in cases of refusal or neglect to make such return and in cases of erroneous, false, or fraudulent returns, in which cases the Commissioner of Internal Revenue shall, *upon the discovery thereof, at any time within three years after said return, is due,* or *has been made,* make a return upon information obtained as provided for in this title or by existing law, or require the necessary corrections to be made, and the assessment made by the Commissioner of Internal Revenue thereon shall be paid by. such person or persons immediately upon notification of the amount of such assessment; and to any sum or sums due and unpaid after the fifteenth day of June in any year, and for ten days after notice and demand thereof by the collector, there shall be added the sum of five per centum on the amount of tax unpaid, and interest at the rate of one per centum per month upon said tax from the time the same became due, except from the estates of insane, deceased, or insolvent persons." (Italics supplied.)

The Supreme Court of Puerto Rico in its opinion in this case held that this provision of law was complied with, the failure to include the $86,795.88 in the return of May 30, 1918, having been discovered May 5, 1920, within three years from May 30, 1918, although the tax was not assessed within that time nor until June 10, 1922. A like construction of a corresponding section in the Revenue Act of 1909 (36 Stat. 11) was entertained by the courts of this circuit (Eliot National Bank v. Gill [D. C.] 210 F. 933; Id. [C. C. A.] 218 F. 600, 602), but the Supreme Court of the United States, in W. P. Brown & Sons Lumber Co. v. Burnet, 282 U. S. 283, 286, 51 S. Ct. 140, 141, 75 L. Ed. 343, states that "there. was under the Revenue Act of 1917 a limitation of three years on the period for assessment." See, also, Aiken v. Burnet, 282 U. S. 277, 280, 51 S. Ct. 148, 149, 75 L. Ed. 339, 341, note 2. And in Stange v. United States, 282 U. S. 270, 274, 51 S. Ct. 145, 147, 75 L. Ed. 335, in speaking of the like provision in the Revenue Act of 1913 (38 Stat. 169, § 2 E), the court said: "Prior to the 1921 Act no legislation barred the enforcement of the liability for a tax under the Act of 1913 (38 Stat. 114). Taxes duly assessed could be collected at any time by suit. *There was a three-year* limitation on assessment (section 2 E, 38 Stat. 169), which if duly made might be followed by distraint. But there was no limitation upon the time within which the tax liability could be enforced by suit without a prior assessment. The 1921 Act was the first to interpose a limitation upon the right of the Government to enforce a tax liability already accrued. It barred collection in any manner after five years only in case no waiver was given."

. Counsel for the respective parties have argued this case as though the tax was seasonably assessed and there was a valid assessment authorizing the collection of the tax by distraint. But it is evident from what has already been said that the tax was not duly assessed, and it is unnecessary to determine whether distraint proceedings instituted for the collection of the tax were seasonably begun, for that method of collection could not have been availed of. But an assessment was not necessary to a collection of the tax by suit. United States v. Ayer (C. C. A.) 12 F.(2d) 194, and cases above cited. The Revenue Act of 1916 imposed a tax upon the entire income received by an individual in a given year, subject to stated deductions and fixed the rates for computing the tax. Sections 1, 2, 3, 4, and 5 (39 Stat. 756). The additional return filed by the plaintiff with the Treasurer on May 5, 1920, stated his net income for the calendar year 1917 subject to tax and the amount of tax due thereon was a mere mathematical computation, the rates of the tax being fixed by section 1 (a) (b) of the act.

Moreover, it is not here contended that the amount of the additional tax of $4,067.22, as computed upon the return of May 5, 1920, was not properly arrived at; or that the interest and surcharges were not in conformity to the provisions of section 9 (a) of the act (39 Stat. 763). The sole contention is that the plaintiff could not legally have been subjected to the payment of the tax at the time it was paid.

We have seen that it could not be collected by distraint, for it had not been assessed within three years from the filing of the original return. It therefore remains to be considered whether, at the time of the payment, the plaintiff could have been compelled by a proceeding in court to pay the tax.

By section 22 of the Revenue Act of 1916 (39 Stat. 776) it is provided:

"Sec. 22. That all administrative, special, and general provisions of law, including the laws in relation to the assessment, remission, collection, and refund of internal-revenue taxes not heretofore specifically repealed and not inconsistent with the provisions of this title, are hereby extended and made applicable to all the provisions of this title and to the tax herein imposed."

By section 3213 of the Revised Statutes (26 USCA § 142), among other things, it was provided:

"And taxes may be sued for and recovered in the name of the United States, in any proper form of action, before any [circuit or] district court of the United States for the district within which the liability to such tax is incurred, or where the party from whom such tax is due resides at the time of the commencement of the said action."

This general provision of law relating to the collection of internal revenue taxes was in full force and effect at the time of the passage of the Revenue Act of 1916. It was made a part of that law by section 22, and thus extended to Puerto Rico by section 23 of the Revenue Act of 1916. And what was said by the Supreme Court in Stange v. United States, 282 U. S. 270, 274, 51 S. Ct. 145, 147, 75 L. Ed. 335, that prior to the act of 1921 "there was no limitation upon the time within which the tax liability could be enforced by suit without a prior assessment" under the act of 1913, is equally true of the Revenue Acts of 1916 and 1917. The Federal Revenue Act of 1921 did not affect or change the Revenue Acts of 1916 and 1917 as applied to Puerto Rico.

The five-year period provided for the collection of taxes under Puerto Rican Acts No. 80, approved June 26, 1919; No. 43, approved July 1, 1921; or No. 74, approved August 6, 1925, have no application to the collection of taxes imposed in Puerto Rico by the Revenue Acts of 1916 and 1917 or to the time within which taxes thus imposed must be collected, as has been herein previously pointed out.

Consequently, as at the time the tax was paid on September 17, 1930, suit could have been maintained against the plaintiff by the Treasurer of Puerto Rico for the collection of the tax, this action cannot be maintained.

The judgment of the Supreme Court of Puerto Rico is affirmed, with costs to the appellee.