JERRY L. CONWAY AND ROSE MARY CONWAY, Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
CONWAY v. COMMISSIONER
Docket No. 4438-88
United States Tax Court
T.C. Memo 1990-589; 1990 Tax Ct. Memo LEXIS 672; 60 T.C.M. (CCH) 1260; T.C.M. (RIA) 90589; November 19, 1990, Filed Bruce M. O'Brien, for the petitioners. Thomas A. Dombrowski, for the respondent. *673 HAMBLEN, Judge.
HAMBLEN
MEMORANDUM OPINION By notice of deficiency, dated December 10, 1987, respondent determined a deficiency in petitioners' 1979 Federal income tax of $ 77,973, an addition to tax of $ 3,899 pursuant to section 6653(a), [1] and increased interest, pursuant to section 6621(c), formerly 6621(d). Petitioners were married and residing in Alpine, California, when they filed the petition in this case. This matter is before the Court on the parties' cross motions for partial summary judgment pursuant to Rule 121. The issue the parties seek to have adjudicated is whether the three-year statute of limitations provided in section 6501(a) bars the assessment and collection of a portion of petitioners' 1979 Federal income tax because petitioners' consent to *674 extend the assessment period was restricted to a certain entity. We assume the following facts based on the parties' pleadings, memoranda, and supporting documents. See Rule 121(b). They are stated solely for purpose of deciding the parties' cross motions for partial summary judgment, and not as findings of fact in this case. Rule 52(a), Federal Rules of Civil Procedure. Petitioners Jerry and Rose Mary Conway jointly filed their 1979 Federal income tax return on September 15, 1980, pursuant to an Application for Extension of Time to File. The limitations period for assessing their 1979 taxes was due to expire on September 15, 1983, pursuant to section 6501(a). On the return, petitioners deducted their alleged losses from the Potomac Coal Program, a coal mining operation in which they had an interest, and their alleged loss of $ 143,472 from the ACG Motion Picture Investment Fund II (hereinafter ACG II), a tax shelter in which they were partners. On February 18, 1983, respondent sent petitioners a letter stating that respondent was examining the tax return of "an entity" in which petitioners had an interest, and that adjustments might *675 be proposed that could affect petitioners' 1979 tax return. Because the three-year period for assessing petitioners' 1979 income tax was due to expire before the examination of the entity's return would be completed, respondent's letter requested petitioners' consent to an open-ended extension of the assessment period. Respondent's letter further stated that if petitioners did not agree to such an extension, respondent would have to issue them a notice of deficiency for their 1979 tax year. Enclosed with respondent's letter was an IRS Form 872A, "Special Consent to Extend the Time to Assess Tax" (hereinafter Form 872A or consent form) that contained no restrictions as to the time period for which it would be effective, or as to the matters that it would cover. Also enclosed was a copy of IRS Publication 1035 explaining taxpayers' rights and options when they are asked to sign a consent form extending the assessment period. On March 4, 1983, petitioners returned a copy of respondent's February 18, 1983 letter to respondent on which Mrs. Conway had written a note at the bottom of the letter which states "I would like to know what 'entity' you are examining prior to signing this document. *676 Please advise." In a letter, dated March 8, 1983, respondent replied to petitioners' inquiry stating that "The entity under examination is the Potomac Coal Program which is a coal mining venture." Petitioners, believing that the extension of the statute of limitations would apply only to respondent's determinations regarding the Potomac Coal Program, signed an IRS Form 872A on March 11, 1983, and mailed it to respondent. The Form 872A that petitioners signed is unrestricted and valid on its face and purports to give petitioners' consent to waive the three-year statutory assessment period for their 1979 tax year indefinitely. Petitioners neither modified the terms of the Form 872A on its face, nor enclosed any transmittal letter or document with the consent form that they mailed to respondent. On March 18, 1983, respondent signed the Form 872A that petitioners had signed, and returned a copy of the executed form to petitioners. At no time have petitioners or respondent executed an IRS Form 872T, "Notice of Termination of Special Consent to Extend The Time To Assess Tax." Petitioners learned that respondent was examining their interest in ACG-II, as well as the Potomac Coal Program, *677 in February 1986, when respondent sent them an examination report setting forth respondent's proposed tax adjustments to their 1979 return with respect to their interest in ACG-II. On December 10, 1987, respondent sent a notice of deficiency to petitioners' last known address by certified mail. In the notice, respondent disallowed petitioners' Schedule C deduction of an alleged $ 644 loss from the Potomac Coal Program, and their Schedule E deduction of $ 143,472 that petitioners claim resulted from their investment in ACG II. Respondent also determined that petitioners owed an addition to tax for negligence, pursuant to section 6653(a), and increased interest due to a substantial underpayment of tax attributable to tax-motivated transactions, pursuant to section 6621(c), formerly 6621(d). Petitioners timely filed their petition on March 7, 1988, disputing the entire amount of the deficiency and the additions to tax. Paragraph five of the petition alleges that the three-year statute of limitations bars respondent from assessing or collecting additional taxes with respect to any issue other than those pertaining to the Potomac Coal Program. Respondent and petitioners filed cross *678 motions for partial summary judgment on July 23, 1990 and August 27, 1990, respectively, on the question of whether the three-year assessment period provided in section 6501(a) had expired with respect to any part of petitioners' alleged 1979 tax deficiency at the time respondent issued the deficiency notice. The parties have also filed objections to each others' motions. If we decide this question for petitioners, petitioners' 1979 tax deficiency as it relates to ACG II will be outside the statutory period within which respondent may assess the tax. Generally, income taxes must "be assessed within three years after the return was filed." A notice of deficiency issued after the three-year assessment period has expired is invalid. Sec. 6501(a). [2] *679 However, taxpayers and respondent may consent in writing to extend the three-year period of limitations on assessment. Sec. 6501(c)(4). [3]
Petitioners argue that their agreement to extend the assessment period includes their written inquiry as to what entity was being examined and respondent's written reply, and that their written consent, therefore, was limited to issues pertaining to the Potomac Coal Program. If we find the terms of the consent document to be unrestricted, petitioners alternatively argue that respondent is equitably estopped from enforcing the consent form against them with respect to certain issues since they would not have agreed to sign it had not respondent *680 represented that the Potomac Coal Program was the only entity being examined. Respondent counters that petitioners objectively assented to the unrestricted terms of the consent Form 872A, as they appeared, when they signed it on March 11, 1983, and that the assessment period, therefore, had not expired with respect to any part of the deficiency on the date the deficiency notice was issued. Respondent further argues that he is not estopped from enforcing the consent form against petitioners with respect to any part of their tax deficiency since he has not misrepresented any fact. Petitioners bear both the burden of going forward and the ultimate burden of persuasion in the instant case. See Adler v. Commissioner, 85 T.C. 535, 540-541 (1985) (addressing situation where taxpayer pleads the bar of the limitations period on assessment and respondent introduces into evidence a consent form that is valid on its face); Rules 39, 142(a). A decision will be rendered on a motion for partial summary judgment if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no *681 genuine issue as to any material fact and that a decision may be rendered as a matter of law. Rule 121(b). We agree with respondent that, as a matter of law, petitioners' consent to extend the three-year assessment period was unrestricted and that the entire deficiency amount, to the extent recognizable in 1979, is inside the statutory period within which respondent may assess the tax. An agreement to extend the period of limitations for assessment and collection is not a contract but a waiver of a defense by the taxpayer. Stange v. United States, 282 U.S. 270 (1931); Schulman v. Commissioner, 93 T.C. 623, 639 (1989); Piarulle v. Commissioner, 80 T.C. 1035, 1042 (1983); Tallal v. Commissioner, 77 T.C. 1291 (1981), affd. on other issues 778 F.2d 275 (5th Cir. 1985). Contract principles are significant, however, because section 6501(c)(4) requires a written agreement, and we look to the objective manifestations of mutual assent, as evidenced by the parties' overt acts, not the parties' secret intentions, to determine the terms of such agreement. Schulman v. Commissioner, 93 T.C. at 639; *682 Piarulle v. Commissioner, 90 T.C. at 1042; 1 S. Williston, Contracts, secs. 22 and 35 (3d ed. 1957); 1 Restatement, Contracts 2d, sec. 19 (1979). In cases where taxpayers executed consents in the belief that they were conditioned, but failed to reduce their understanding to a writing associated with the consent, we have found the consent to be valid and/or unrestricted. See Kronish v. Commissioner, 90 T.C. 684 (1988); Tallal v. Commissioner, supra.In cases where we have granted relief from a consent which appeared valid or unrestricted on its face, we have looked to the documents which were forwarded by the taxpayer with the consent. In Windfall Grain Co. v. Commissioner, 23 B.T.A. 725 (1931), the restriction was contained in the taxpayer's letter transmitting the consent to respondent. Similarly, in Smith v. Commissioner, T.C. Memo. 1989-87, we held a consent invalid where respondent did not comply with a condition precedent explicitly stated in a taxpayer's letter transmitting the partially executed consent. In the instant case, petitioners signed *683 a Form 872A that is unambiguous, unrestricted, and valid on its face. No written restrictions or additional contract terms were enclosed with the consent form that petitioners signed and mailed to respondent. Thus, petitioners assented to an agreement that, within the four corners of the document, waived, without conditions or restrictions, the defense that respondent issued the deficiency notice for their 1979 tax year after the three-year tax assessment period had expired. Whatever subjective belief or intent petitioners harbored to restrict their consent was never reduced to a writing associated with the written consent form, and is, therefore, irrelevant to the interpretation of their written agreement. See Kronish v. Commissioner, supra.
Petitioners argue, alternatively, that even if they assented to the consent form, respondent nevertheless is equitably estopped from enforcing it against them with respect to issues other than the Potomac Coal Program. Respondent argues that petitioners have not shown all the elements necessary to invoke the doctrine of equitable estoppel. We agree with respondent. It is well established that the estoppel doctrine *684 should be applied against respondent with the utmost caution and restraint. Schuster v. Commissioner, 312 F.2d 311 (9th Cir. 1962); Boulez v. Commissioner, 76 T.C. 209, 214-215 (1981), affd. 810 F.2d 209 (D.C. Cir. 1987); Estate of Emerson v. Commissioner, 67 T.C. 612, 617 (1977); Hudock v. Commissioner, 65 T.C. 351 (1975). "[T]he policy in favor of an efficient collection of the public revenue outweighs the policy of the estoppel doctrine in its usual and customary context." Schuster v. Commissioner, 312 F.2d at 317. The essential elements of estoppel are (1) there must be a false representation or wrongful misleading silence; (2) the error must be in a statement of fact and not in an opinion or statement of law; (3) the person claiming the benefits of estoppel must be ignorant of the true facts; and (4) he must be adversely affected by the acts or statements of the person against whom an estoppel is claimed. Estate of Emerson v. Commissioner, 67 T.C. at 617-618. Petitioners contend that the first element of estoppel is satisfied because "respondent must have been *685 aware of the pending examination of ACG-II when it responded to petitioners' inquiry on March 8, 1983." Petitioners claim that respondent's failure to disclose this information, either on the letter accompanying the consent form or on the reply to petitioners' inquiry, constitutes a false representation or wrongful, misleading silence. We rejected petitioners' argument in Kronish v. Commissioner, supra, a case in which the taxpayer argued, under similar circumstances, that respondent was equitably estopped from enforcing a consent agreement extending the assessment period. In that case, respondent sent the taxpayer a letter that said that a corporation of which she was a licensee was being audited, that certain adjustments were being made to the corporation's return that could affect her individual return, and which requested her to sign a consent form to extend the assessment period. The taxpayer signed the extension agreement and subsequently was issued a deficiency notice for items other than those flowing through the corporate return. Although the taxpayer argued respondent's statement constituted a false representation or a misleading silence satisfying the *686 first element of estoppel, we held that the statements were neither false nor misleading since respondent's letter nowhere represented that the consent form was limited in scope to those items. Likewise, we find that respondent in this case did not misrepresent or wrongfully remain silent with respect to the scope of the 872A consent form extending the assessment period for petitioners' 1979 taxes. Although respondent's transmittal letter and reply to petitioners' inquiry suggest respondent was concerned about the Potomac Coal Program, those documents do not state that the 872A consent form, which is clearly unrestricted by its terms, would be limited to adjustments pertaining to that entity. Thus, petitioners have failed to satisfy the first element of equitable estoppel. The fourth element of equitable estoppel is also not satisfied in that petitioners have failed to show that they would be adversely affected if respondent is not estopped from enforcing the consent document against them on certain issues raised in the notice of deficiency. If petitioners had refused to sign the Form 872A, respondent would have immediately issued a deficiency notice, possibly determining a larger *687 deficiency in their tax with respect to their interest in ACG-II than in the notice they received. Accordingly, the doctrine of equitable estoppel is not applicable in this case. We have found that the unrestricted consent Form 872A is complete and unambiguous on its face and represents the agreement of the parties. Although one could reason that petitioners' inquiry as to what entity was being examined, and respondent's reply to petitioners' inquiry, contain verbiage to constitute the terms of a proposed restriction on petitioners' consent, we find that no such offer was intended, clearly communicated, or accepted by both parties. Moreover, respondent is not equitably estopped from enforcing the executed consent form against petitioners with respect to any issue raised on the notice of deficiency. We have considered petitioners' other arguments and find them unpersuasive and without merit. Therefore, having found no genuine issue of material fact with respect to the unrestricted nature of petitioners' consent, we hold, as a matter of law, that the assessment period for petitioners' 1979 tax year remains open with respect to all issues raised on the deficiency notice, including *688 petitioners' claimed ACG-II partnership loss deduction. Accordingly, respondent's motion for partial summary judgment on this question is granted, and petitioners' cross motion for partial summary judgment is denied. To reflect the foregoing, An appropriate order will be issued. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Sec. 6501(a) provides as follows: SEC. 6501(a). GENERAL RULE. -- Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) or, if the tax is payable by stamp, at any time after such tax became due and before the expiration of 3 years after the date on which any part of such tax was paid, and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.↩
3. Sec. 6501(c)(4) provides as follows: (4) EXTENSION BY AGREEMENT. -- Where, before the expiration of the time prescribed in this section for the assessment of any tax imposed by this title, except the estate tax provided in chapter 11, both the Secretary and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.↩